UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUIS SCHEPPEGRELL II** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-5794** |
| **BERNIECE R. HICKS, ET AL.** | **SECTION "B"(2)** |

### ORDER AND REASONS

Before the Court are two separate Rule 12(b)(6) motions to dismiss filed by Defendants Berniece Hicks ("Hicks") and Barbara Young ("Young"). Rec. Docs. 19, 21. Plaintiff Louis Scheppegrell (hereinafter "Scheppegrell" or "Plaintiff") filed oppositions in response to both motions. Rec. Docs. 24, 26. Hicks and Young each filed a reply memorandum. Rec. Docs. 32, 34. For the reasons outlined below,

**IT IS ORDERED** that the motions are **GRANTED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of Plaintiff's former membership in Christ Gospel Churches International, Inc. ("CGCI" or "the church"). Defendant Hicks founded the church over fifty years ago and continues to serve as a preacher at the age of ninety-seven. Rec. Docs. 1 at 2; 19-1 at 1-2. According to Hicks, CGCI currently has twenty-eight (28) affiliated churches in the United States and a number of others around the globe. Plaintiff was a member of the church from the summer of 1973 until October 1984. Rec. Doc. 1 at 5.

1

Scheppegrell first joined the Kenner, Louisiana branch of CGCI in the summer of 1973. Rec. Doc. 1-2 at 6. In July 1978, he moved to Jeffersonville, Indiana to attend CGCI's main church and bible school. Rec. Doc. 1-2 at 6. Scheppegrell claims that Hicks secured his trust and confidence, and that of other parishioners, by espousing the "[D]octrine of the Bride." Rec. Doc. 1-2 at 3-4. At the heart of Hick's Doctrine is her claim to being "the Witness" to the Holy Ghost. Rec. Doc. 1-2 at 5. Hicks allegedly achieved this status through a number of one-on-one, "in the flesh" meetings with Jesus Christ. Rec. Doc. 102 at 2-5. Hicks used the insight she gleaned from these meetings to advise her parishioners on a number of significant life decisions, including where to go to college, what employment and business decisions to make, and whom to marry. Rec. Doc. 1-2 at 5. The alleged meetings also gave Hicks great influence over her followers because those who refused to comply with her advice—"the decision of the 'Holy Ghost'"— were threatened with the full gamut of repercussions: loss of standing within the church, exposure to hellfire and brimstone, and eternal damnation. Rec. Doc. 1-2 at 5-6. Scheppegrell claims that he supported the church though tithing, donating approximately $22,000 over the years of his membership. Rec. Docs. 1-2 at 6; 7 at 10.

In 1975, Hicks held a special meeting with CGCI's inner circle, known within the CGCI community as "Purple Pearls," at

which she distributed notes ("the Notes") from one of her meetings with Jesus. Rec. Doc. 1-2 at 3. However, in the late 1970s, rumors began to circulate that Hicks had plagiarized the Notes. Rec. Doc. 1-2 at 3. Scheppegrell, his wife, and a number of others attended a small group meeting with Hicks in October 1984 in an attempt to get to the bottom of such rumors. Rec. Doc. 1-2 at 3. In that meeting, Scheppegrell alleges that Hicks openly admitted to copying the substance of the Notes from a book by Carlos Suares entitled "The Song of Songs: The Canonical Song of Solomon Deciphered According to the Original Code of Qabala." Rec. Doc. 1-2 at 2-3. Scheppegrell immediately left the church after Hicks's alleged admission. Rec. Doc. 1-2 at 6.

Around 2003 or 2004, Scheppegrell started a blog entitled "Romans Letter/Christ Gospel and Sister Hicks Revealed." Rec. Doc. 1-2 at 2. The purpose of the blog was to expose Hicks's alleged plagiarism and to debunk her Doctrine of the Bride. Rec. Doc. 1-2 at 2-4. Scheppegrell claims that his blog is "crucial and intrinsically detrimental to the doctrines espoused by Hicks and the operation of Christ Gospel Church International, Inc." Rec. Doc. 1-2 at 3. Moreover, he contends that CGCI and Hicks were fearful that the information revealed by his blog "would cause a reduction in tithing and other revenue through the loss of members in CGCI churches worldwide." Rec. Doc. 1-2 at 4.

3

On May 28, 2013, Defendant Young, who is Hicks's daughter and CGCI's attorney, wrote a letter to Scheppegrell explaining that his postings on his blog "made false statements of fact and cobbled together many half-truths that defame [Hicks] and present the church in a false light." Rec. Doc. 1-2 at 22. The letter also urged Scheppegrell to "remove all of the negative and misleading content" from the blog and to contact Young so that they could "work together to resolve any lingering animosity" towards the church. Rec. Doc. 1-2 at 23. After exchanging a handful of emails, Scheppegrell informed Young that he would take down the blog so long as the "matter" between him and the church was "closed". Rec. Doc. 1-2 at 25-28. He also informed her that he was "unable to pursue any legal issue concerning this letter." Rec. Doc. 1-2 at 27. In response, Young sent Scheppegrell a letter with a proposed settlement agreement. Rec. Doc. 1-2 at 25, 30-32. Though he signed the agreement, Scheppegrell claims that he did so as a result of Young's extortion. Rec. Doc. 1 at 3.

He claims that the following covenants within the agreement constituted "obvious threats of an intent to harm [him] outside of any legal proceedings whatsoever, including an obvious threat to damage [his] professional reputation and ability to earn a living:" (1) the church's promise not to further disclose his identity as the author of the blog; (2)the church's promise not to refer to him in a derogatory fashion in public; and (3) the church's promise

not to contact his employer. Rec. Doc. 1-2 at 4-5. Moreover, he claims that the settlement agreement divested him of his intellectual property rights in his blog and his ability to write a subsequent book exposing how CGCI operates. Rec. Doc. 1-2 at 5.

Scheppegrell then filed suit against Young and Hicks for civil remedies under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Red. Doc. 1 at 1. Specifically, he seeks injunctive relief, declaratory relief, damages, and attorney's fees. Rec. Doc. 1 at 1. Plaintiff claims that the following actions constitute RICO violations. Concerning Hicks, Scheppegrell alleges that she "engaged in a pattern of racketeering activity by fraudulently promulgating worldwide, by mail and wire, that she had face-to-face, 'in the flesh' meetings with Jesus Christ." Rec. Doc. 7 at 1. He also contends that Hicks directed her daughter's unlawful activity. Rec. Doc. 7 at 2. With respect to Young, he claims that she "participated in a pattern of racketeering by sending extortionate letters and 'settlement agreements' that secured victims' silence and protected CGCI's illegal revenue stream." Rec. Doc. 7 at 2. Finally, Plaintiff's case statement alleges the following injuries to his business and property: (1) his "professional reputation, business relationships, and ability to earn a living were threatened by the Enterprise if he did not comply with the 'settlement agreement';" (2) his exclusive rights under the Copyright Act were constrained;

5

and (3) "fear of economic harm remains a damoclean Sword over [him] such that he cannot continue to express his views on the Enterprise through either a blog or by publishing a book that is planned." Rec. Doc. 7 at 9. Later in his case statement, Plaintiff also refers to the $22,000 he donated to CGCI over the course of his eight-year membership as damages resulting from the Defendants' RICO violations. Rec. Doc. 7 at 10. Based on these injuries, Plaintiff urges this Court to grant him relief.

## II. THE PARTIES' CONTENTIONS

Hicks seeks dismissal of all of Plaintiff's claims against her pursuant to Federal Rule of Civil Procedure 12(b)(6). Rec. Doc. 19. First, she asserts that any claims based upon donations Scheppegrell made as a member are barred by RICO's four-year limitations period. Rec. Doc. 19-1 at 7-12. Second, Hicks argues that Plaintiff has failed to adequately state a RICO claim because he has not sufficiently pled predicate acts involving fraud or conspiracy, and he has not pled any compensable injury. Rec. Doc. 19-1 at 12-20. Finally, Hicks maintains that her statements regarding Jesus are protected by the First Amendment and cannot form the basis of a RICO action. Rec. Doc. 19-1 at 20-23. For these reasons, she asks this Court to grant her motion to dismiss.

Young seeks dismissal of the claims against her on similar grounds. She argues that Scheppegrell has not adequately stated a RICO claim because: (1) he failed to show the existence of

6

predicate acts; (2) he failed to allege a pattern of racketeering; and (3) he has not sustained any actual damages to his business or property. Rec. Doc. 21-1 at 11-22. Accordingly, Young urges this Court to dismiss Scheppegrell's claims.

Scheppegrell's oppositions claim that the motions to dismiss attempt to mislead the Court, and that he has adequately pled all elements of a RICO claim. Rec. Docs. 24 at 8-9; 26 at 8-10. Specifically, he argues that Young, at the direction of Hicks, extorted him by threatening economic harm that led to the signing of the settlement agreement, which "stripped Scheppegrell of his intellectual property." Rec. Doc. 24 at 8-9. *See also* Rec. Doc. 26 at 8-9. He further claims that the statute of limitations issue raised by Hicks is irrelevant because he is not trying to recover for damages suffered decades ago, but rather for the damage to his intellectual property rights since the settlement agreement was signed. Rec. Doc. 26 at 8. Both Hicks and Young filed reply memoranda countering Plaintiff's arguments. Rec. Docs. 32, 34.

### III. **LAW AND ANALYSIS**

#### **a. Standard of Review**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party can move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such motions are viewed with disfavor and rarely granted. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem.*

*Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### b. Plaintiff's RICO Claims

Plaintiff claims violations of 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d). Under all of these subsections, "RICO claims require '1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). *See also Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995). "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). Predicate acts consist of state or federal

crimes. *Id*. Finally, to have standing to bring a RICO claim, a plaintiff must plead damages to business or property that resulted from the RICO activity. *In re Taxable Mun. Bond Securities Litigation*, 51 F.3d 518, 521 (5th Cir. 1995) (hereinafter "*Bond Securities Litigation*").

Both Young and Hicks challenge several elements of Plaintiff's RICO claims as insufficient to state a claim upon which relief can be granted. The Court will begin its analysis by addressing the standing element—whether Plaintiff has adequately pled damages to business or property.

### 1. Damages to Business or Property

RICO protects against actual "concrete financial loss" resulting from the RICO scheme. *Bond Securities Litigation*, 51 F.3d at 523 (quoting *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). Speculative damages are not compensable under RICO. *Id*. (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990)). Moreover, RICO does not protect against personal injuries, emotional distress, or "mere injury to a valuable intangible property interest." *Id*. (quoting *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)); *Pohlot v. Pohlot*, 664 F. Supp. 112, 116 (S.D.N.Y. 1987) (pointing to numerous cases that have "uniformly held that personal injuries and emotional distress do not come within RICO.").

Plaintiff's case statement refers to three specific forms of damages when asked to describe the alleged injury to his business or property. Two of those alleged injuries are wholly speculative: (1) the alleged threat to his reputation, business relationships, and ability to earn a living, and (2) his reasonable fear of economic harm that "remains a damoclean sword" over his head. Rec. Doc. 7 at 9. Threatened injuries and fear of future injuries are speculative and not actual damages because they have not yet occurred. It is axiomatic then that Scheppegrell cannot demonstrate concrete financial loss for these theoretical injuries, meaning they are insufficient to support his RICO claims. *See Bond Securities Litigation*, 51 F.3d at 523. In fact, Scheppegrell seems to have realized the futility of relying on such speculative damages. In his opposition to Hicks's motion, he claims that he does not seek to recover for those injuries—despite the seemingly clear language in the case statement, and that he only referenced them because they precipitated the actual injuries to his intellectual property rights. Rec. Doc. 26 at 15.

The third injury alleged in Plaintiff's case statement addresses those intellectual property rights. He argues that the exclusive rights granted to him by the 1976 Copyright Act were constrained by Defendants' racketeering activity.[1] Rec. Doc. 7 at

---

[1] Plaintiff claims in separate filings that he was "divested," "dispossessed," and "stripped" of his intellectual property rights as a result of the settlement agreement. However, the settlement agreement, which Scheppegrell

10

9. Specifically, Scheppegrell refers to his rights as an author in the content of his blog, which he agreed to take down as a part of the settlement agreement. He argues in opposition to the pending motions that the agreement kept him from exercising his rights because he could never reproduce, distribute, or publicly display the content of his blog. Rec. Doc. 26 at 16. Further, the agreement prevented him from using "his creative expression [within the contents of the blog] as a part of his upcoming 'tell-all' book." Rec. Doc. 26 at 16. Finally, he claims that the agreement deprived him of his audience that he had cultivated for years through the blog. Rec. Doc. 26 at 16. While acknowledging that he had not "monetized his blog," Plaintiff contends that the intellectual property still has a definite value, the amount of which will be determined by a jury. Rec. Docs. 24 at 17; 26 at 16-17.

However, it is well established that "mere injury to a valuable intangible property interest" is an insufficient injury to support a RICO claim. *Bond Securities Litigation*, 51 F.3d at 523 (quoting *Steele*, 36 F.3d at 70). *See also Chaset v.*

---

repeatedly references in his complaint and attaches as an exhibit thereto, unambiguously leaves Plaintiff with all of his intellectual property rights in the blog. *See* Rec. Doc. 1-2 at 30-32. Accordingly, the Court will interpret Plaintiff's claimed injury to his intellectual property as an impermissible limitation on his rights rather than a divestment because it is evident from the attached settlement agreement that he has retained all rights in the blog. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts may consider "documents incorporated into the complaint by reference."). Moreover, the language used to describe the alleged injuries in the oppositions to the pending motions support this interpretation. *See* Rec. Docs. 24, 26.

11

*Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002) ("To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest."); *Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005) (stating the same principle); *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (stating the same). Here, Plaintiff claims that his intellectual property interest in the blog has value, and that said value has been harmed by the limitations contained in the settlement agreement. Under a clear application of well-established law, Plaintiff's inability to reproduce his blog and inability write a tell-all book are insufficient injuries absent a showing of concrete financial loss. Scheppegrell does not claim that he has any book deal and concedes that his blog was not "monetized." As such, Plaintiff cannot show a concrete financial loss because he does not allege that he has already lost income due to the limitations on his rights or that he had a definite expectation of income from the intellectual property rights that is now lost. All Scheppegrell has pled is diminished value of his intellectual property rights and the possibility that those rights could be used for financial gain in the future, which are both insufficient to support a RICO claim. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interest or to an 'intangible property interest' is not sufficient to confer RICO standing.").

The only concrete financial injury alleged by Scheppegrell is his tithing of $22,000 as a result of Hicks's allegedly unlawful activities.[2] However, Hicks argues that Plaintiff's tithing falls well outside of the RICO statute of limitations, and thus cannot support the claim. Rec. Doc. 19-1 at 7-12. While the civil RICO statute does not explicitly provide a statute of limitations, the Supreme Court of the United States analogized to the Clayton Act and found a four-year limitations period appropriate for civil RICO actions. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). The timing of the discovery of the alleged injury governs when the limitations period begins to run. *Rotella v. Wood*, 528 U.S. 549, 555 (2000).

Here, Scheppegrell became aware of the injury in 1984 at the latest when he allegedly left the church. All of Scheppegrell's donations took place before that time, because he left the church after finding out about Hicks's alleged plagiarism. So, even assuming *arguendo* that Scheppegrell's voluntary donation of money could form the grounds of a RICO injury, that injury is too distant to support a RICO claim filed roughly thirty years later. *See Agency Holding Corp.*, 483 U.S. at 156 (giving civil RICO claims a four-year limitations period); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 773 (5th Cir. 2000) (noting that even if a RICO plaintiff

---

[2] While Scheppegrell's opposition claims that he does not rely on this injury to support his RICO claims, the Court will address it anyway for the sake of comprehensiveness.

can identify a new predicate act within the limitations period, the new predicate act cannot be used to bootstrap earlier injuries that took place outside of the limitations period). Consequently, Scheppegrell has pled no cognizable injury sufficient to support a RICO claim. Because Plaintiff has not pled an injury adequate enough to support his claims, he does not have standing and all of his claims must be dismissed.[3] *See Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 746 (5th Cir. 1989).

## IV.  CONCLUSION

For the reasons outlined above, Scheppegrell does not have standing to bring this suit because he has not sufficiently pled injury to business or property. Accordingly,

**IT IS ORDERED** that the Defendants' motions to dismiss are **GRANTED**. The futility of an amended complaint is apparent from the record and foregoing analysis.

New Orleans, Louisiana, this 25th day of May, 2016.

_____
UNITED STATES DISTRICT JUDGE

---

[3] As the Court finds that Plaintiff lacks standing to bring this suit, it need not reach the other issues raised in Defendants' motions to dismiss.